May it please the Court, my name is Tom Tao, and I would like to reserve a substantial part of my argument for rebuttal. Well, you can save as much time as you want. You want to let the government go first? Well, I almost would like to do that, because I don't understand their reason. Well, before you sit down, Mr. Tao, maybe you can help me. What relief can we afford your client, given the fact that there have now been two intervening elections, the voters of the tribe have spoken, so I don't think we can give him his position back. Total relief, because you still can't get him back to office. I agree, that's gone. But there's so much else. There's the salary. There's the attorney's fees. But you don't have a claim. We don't have a claim against the government. Right, for the salary. So how can we enter an order to a sovereign tribe telling them that they have to disperse funds from tribal funds to pay this guy his salary back? Just the other way around. If you reverse the decision, that's all I'm asking you to do. Reverse the decision so that then when we get an appropriation from the tribe, the BIA won't approve it. You said if. If we get. If you get it. Yes. That's just purely speculation. Well, not when there is a court order ordering them to do it. No, I don't think so. I think that when the court, the highest court of the land in northern Cheyenne says you pay those attorney's fees, and if we get an order, that's already on the record. If we get an order saying you pay the salary, I think the court has to do it. Your whole complaint here, as Judge Tallman just mentioned, if you read the complaint that you filed here in district court, it's a suit against the Department of Interior. That's correct. And the only relief you really seek is an injunction to enjoin the Department of Interior from recognizing the Parisian decision. That's correct. That's basically all you ask for. And that would be substantial, very substantial relief, because right now. But the Parisian decision is moot. It recognizes a new president who's no longer the president. No, no, no, no, no. It doesn't. The problem is it can be repeated. The issue is still there. When it happens again, we'll have the same problem. And that's what I want you to avoid so we don't have that problem again. Since time immemorial, it has been the department, and I think it's codified in the interior regulations, that the Department of the Interior is not to inject itself into internecine disputes within tribes. That's for the tribes to decide. Except that, and this is the exception, in the event of an impasse, which apparently happened here, the department has to, for the good of maintaining tribal operations, they've got to basically recognize one or the other on an interim basis until the tribe resolves the problem. I totally disagree in this case, as these facts indicate. So this is the exception? No, no. This is not even the exception. There was no impasse. There was no problem. There was a mechanism by the tribe, established by the tribe, to resolve these disputes. It was employed. It was used. A decision was made. And the only people that didn't obey it is the BIA. And the BIA brought their BIA police and evicted this man without a clear order. As I understand it from the record, maybe I misread the record, the decision that the tribe made was to recognize somebody else. They replaced him. The tribal council, there are two, three boards of government. There's a tribal council and an executive and a judiciary. The tribal council tried to impeach Little Coyote. No question about it. And they passed a resolution, but they didn't follow the Constitution. Little Coyote took him to court, and Little Coyote got to court, and the court unanimously from the bench ruled that this was done unconstitutionally. The meeting you called was not properly called. It didn't exist. Anything that happened at that meeting is null and void. And then, instead of implementing that decision, the BIA said, well, we don't like that decision. We think that the Constitution reads differently and that the court didn't really have jurisdiction, even though the court said they had jurisdiction on that very issue. And so it was all done. The decision was over. The decision was made. And the BIA stepped in and said, get out. And that's where the problem is. We've got to correct that. That's an abomination. Why do we have to correct it? The person that the BIA recognized is no longer the president of the tribe. There have been two intervening elections. And so there's nothing left to enforce with regard to the Parisian decision. It has, in essence, become moot. It can be repeated, and there are effective reliefs, but we can still give it. Why don't you just, you know, once why can't he just file a claim with the council for money? We can do that. We can do that. And we can do that. But with the Parisian decision, not a chance. That's my concern. I fail to understand how that all the Parisian decision does is recognize at that moment, at that particular period of time, that there was going to be an interim leader, president, and it approved the budget allocations. That's it. Well, and the budget allocations that were made, I think, need to be reviewed and reviewed. Everything that was done that was illegal, that was signed by a president who had no authority, should be reviewed. That only speaks. I recall when you stood up there, you wanted to save a substantial amount of time. You're down to 3 minutes and 17 seconds. Okay. Let me just say this. I think that the facts are astounding, that they can use the police power. They did work for the BIA. The police worked for the BIA. The order came out from Washington the day after the Parisian decision to vacate the premises. They sent the BIA police in, busted the Capitol door, even though the other door was open, and they came in with guns poised against Little Coyote, arrested him, and took him to jail and booked him for trespass. Where do I find a Bivens claim in your complaint? Pardon? Where do I find the Bivens claim in your complaint? I'm sorry. I did not file a Bivens claim at that time. And you just outlined allegations that might make a dandy little Bivens claim, but it's not in your complaint. That's true. I haven't filed a Bivens claim. That's also true. But the fact is, this is action of the United States government, and I do think that the United States government shouldn't be allowed to do this. Okay. And I couldn't get any relief. Thank you. All right. Thank you. May it please the Court, my name is Scott Bauer, and I represent the federal appellees in this matter. As Your Honors alluded to in your questioning of Mr. Tao, quite simply, this case is moot. It is moot because since the BIA decision that is at issue, and that Mr. Little Coyote challenged in his complaint in January of 2008, there have been two tribal elections in which individuals other than Mr. Coyote were elected president. Therefore, there is no longer any live controversy regarding the Parisian decision. It simply temporarily recognized an individual with whom the government would conduct relations pending a final outcome, a final determination of the ongoing tribal leadership dispute. And as this Court has recognized in cases including the Neighbors v. Cutty Mountain decision, cases become moot when there is no longer any effective relief that the federal courts can grant. And in this case, there is no effective relief for any of the claims that Mr. Little Coyote alleges. Now, he keeps talking about the salary while he was in office and the attorney's fees that were awarded by the Constitutional Court. Is there a way within the tribal system for him to make a claim for that? He can make a claim against the tribe for that. He can make a claim against the tribal council or the tribal courts. The Bureau of Indian Affairs actually has absolutely no role in that. The Bureau of Indian Affairs cannot force the tribal council or any other tribal entity to pay back salary or attorney's fees. The Bureau of Indian Affairs cannot bring that claim on the House. Does the Bureau of Indian Affairs have any say as to whether or not that money can be spent, money like that can be spent? The only possible role that the Bureau of Indian Affairs would play is that resolutions passed by the tribe to expend tribal trust funds or other funds that have been deposited in the United States Treasury on behalf of the Northern Cheyenne Tribe, those must be approved by the supervisor of the Northern Cheyenne Tribe. One of the allegations that Mr. Tao raises in his briefs is that the BIA would somehow block that appropriation if the tribe, if the tribe decided to go ahead and pay Mr. Little Coyote's back salary and attorney's fees. The United States would argue, Your Honor, that that is an entirely speculative claim. There is no evidence. That claim is really not even in this complaint. We're not even there. He's not. You're right. It's speculative at best. That's correct. And if it were to happen, he would have a claim against, at that point, against the BIA for not approving those budget resolutions. So he would have redress at that point if it were to occur. Counsel, I don't think it's in the record given the procedural posture of this case coming to us or injunctive relief was sought, but do we know whether or not aside from running for reelection and being defeated in one of those two subsequent elections, whether Mr. Little Coyote ever pursued a claim within the tribe? I am not aware of any claim that he pursued for either back salary or attorney's fees or wrongful removal of office within the tribal authorities, Your Honor. And you're correct, it's not in the record if he did pursue any such claim. I mean, I think as Judge Pius pointed out in his questions of Mr. Tao, it's really pretty speculative at this point. I think I understand Mr. Tao's argument to be this is capable of repetition yet evading review, but I'm not sure how we would reach that conclusion given the unique set of facts here. We address that issue in our brief as well, Your Honor, and we would argue that this case does not fall into the exception for capable of repetition yet evading review. That would be particularly true, would it not, in that Mr. Tao's allegation that the BIA used its police power to override a decision of the highest tribal court, Mr. Little Coyote doesn't really have any individualized stake in that at all, even if it were repeated, does he? With respect to the claim regarding any impact that the BIA decision may have had on the constitutional court, one thing we would argue is that that's a matter for the constitutional court, not for Mr. Little Coyote, but more importantly... That indeed is my point. Yes. That's their beef, not his beef. Correct. And I think it's also worth noting that the BIA cannot render any sort of judgment about the authority of tribal authorities, be it the tribal council or tribal courts, so the BIA's decision doesn't have any impact on the jurisdiction of the court, which court is a superior court. The only situation the BIA was presented in was a situation similar to what was at issue in the Goodface v. Grass Rope case in the Eighth Circuit, where there was a tribal dispute. They had to recognize some tribal authority with whom to conduct relations. In that case, the BIA was actually found arbitrary and capricious for not recognizing some authority. And so against that backdrop, Mr. Parisian made the decision that he did, based upon all the facts that were before him at the time. So just as a matter of curiosity, legal curiosity, I guess, so in this kind of situation, the claim is really an APA claim against the BIA for abuse of discretion. That's correct, Your Honor. That was the Bible fraud. You might be able to get to what the BIA did through that mechanism. Absolutely. In some instances. Yeah. There's no evidence that in every case the BIA opinion would become moot before the objector would have an opportunity to fully litigate the case. Also, you wouldn't know in this hypothetical that has yet to occur whether or not the tribe might abide by the decision of the constitutional court in the next case that comes down the road, in which case it would never get to the BIA. That's correct as well, Your Honor. And it's also the case that there were, this was a one-time decision based on a unique set of facts to resolve one leadership dispute with this tribe. This was not the sort of broader policy decision with repeated ramifications that you see in the cases in which the exception for capable repetition yet evading review has been applied. Okay. So we would argue that that exception does not apply here. In short, Your Honors, the United States feels that given the lack of ability for there to be any redress in the federal courts for any of the alleged claims by Mr. Little Coyote, this case is moot. The only other point that we would note is that in addition to that, to the extent that what Mr. Little Coyote is seeking is his return to office or some sort of interference in the tribal operations, all of the Federal court's opinions have been very clear that that is not the role of the Federal judiciary. We don't even have to touch that if it's moot. That's right. If it's moot, the case is over. I think Mr. Tao has already conceded that point in any event, that there is no possibility of returning Mr. Little Coyote to the office that he wants to, at least by court order. That's correct. He has conceded that in his briefs just now in our argument. Right. And you've articulated exactly the way we would. This case simply is moot. Thank you. Unless Your Honors have any further questions. I guess the last question I have for you is given the existence of the good faith opinion in the Eighth Circuit, is that a sufficient statement of the law in terms of what the obligations of the BIA are in a situation where an impasse occurs in the operation of a tribe, or is there some reason why we should publish a decision that adopts the Eighth Circuit rule if we're so inclined? There actually have been other decisions by other courts in which courts have held that the BIA has a duty to recognize. There's been a couple of district courts that have so held. So at this point, the state of the precedent is supportive of what the BIA did in this instance? I am not aware of any decision by any federal court of appeals that said that the BIA should stay hands off and in this type of situation not recognize a tribal authority with whom to conduct relations. Okay. Thank you, Your Honors. I would ask on behalf of the federal appellees that this court affirm the lower court's order dismissing this case. Mr. Tao, you have 2 minutes and 12 seconds. Thank you. The question is how to stop the government from doing this type of thing again. And that controversy still exists. Will the government recognize the constitutional court? But, Mr. Tao, with respect, what does Mr. Little Coyote have to do with that? Isn't that really the constitutional court's complaint? Aren't they the ones that have been offended or the tribe as a whole or the council? But where does he have a personal stake in that? I understand his stake with respect to the salary and the attorney fees. But with respect to the police and the BIA coming in, doing what they did and what you're venting at this point, what's his stake in that? What is his standing to challenge that? Well, he's a member of the tribe. He was elected as the president of the tribe representing all the people. And he ñ and, by the way, the court, the constitutional court did file an amicus curiae brief in this matter. They filed no direct complaint. They have not sought relief against the department or the BIA. No. But the precedent is pretty clear that it doesn't make much difference what the constitutional court does. The BIA is going to make the final decision. And I think he, as an individual member, has a right to challenge that. Do you have any authority to that effect, that a member of a tribe or is a former officer of the tribe has the right, if you will, in loco parentis or in some other capability or capacity to challenge the federal government's action against the court, against the constitutional court? I don't ñ I can't cite any cases. There aren't any, are there? I don't know that I can cite ñ I know there's quite a bit of litigation on this question of citizens' rights. But let me ñ let me call the Court's attention to the Northwest Environmental Defense Center case where there was an injunction against salmon fishing in the 1986 season. The season went by. The Court said the issue is still there and went on. The burden of demonstrating mootness is a heavy one. It's not necessarily ñ not necessary to have pled for the specific relief that you asked for. Any effective relief. I mean, we've got the annual migration of salmon. We've got a commercial ñ a substantial commercial fishery for which there is lots of competition. I'm not sure I see the factual analogy to this case. Well, there's ñ there's going to be another election and there's going to be another dispute between tribal councils. All speculation about what might ñ might or might not happen. Well, I understand your concern about the speculation. Okay. But this particular case is still not done. We've got your point. It's well ñ well made. And it's ñ you're over your time. So thank you very much. Thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: Paez, Tallman, Smith M.